**NORTH AMERICAN VAN LINES, INC., Plaintiff,**

v.

**STATE BOARD OF TAX COMMISSIONERS OF the STATE OF INDIANA, et al., Defendants.**

Civ. No. F 83-6.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Jan. 3, 1984.

Thomas M. Moorhead and Thomas M. Shoaff, Shoaff, Parker & Keegan, Gerald A. Burns, Fort Wayne, Ind., for plaintiff.

Dan S. LaRue, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## ORDER

LEE, District Judge.

On November 18, 1983, plaintiff filed its "Motion for Summary Judgment." Defendants timely filed a response on December 8, 1983 to which plaintiff responded on December 13, 1983. Upon full briefing of the pending motion, this court held a hearing on December 15, 1983. Because the defendants had alluded to the possibility that this court should abstain from further adjudication of this matter pending the outcome of somewhat duplicative proceedings in a state court, this court directly inquired into that issue at the hearing. At the close of the aforementioned hearing, the court invited the parties to submit post-hearing briefs on the issue of abstention within one week from the date of the hearing. Plaintiff filed its memorandum relating to abstention on December 22, 1983. Defendants have, to date, failed to further brief the issue. Notwithstanding defendants' failure to further brief the abstention issue, this court is inclined to abstain from present resolution of the matter and stay further adjudication of the federal claims pending the outcome of the state court proceedings. This order is entered to set forth the reasons for that decision. Prior to reaching the legal issues involved, an overview of the facts is in order.

### Factual Background and Procedural Posture

The essential facts underlying this litigation are not in dispute. They are as fol-

lows. Plaintiff, North American Van Lines (hereinafter NAVL) operates motor carrier transportation property in interstate and intrastate commerce. Its operating situs, and principal place of business, is in Washington Township, Allen County, Indiana. Defendants include the State Board of Tax Commissioners and various members of that Commission, the Indiana Department of State Revenue and the Commissioner of that Department.

Plaintiff's complaint arises from the Indiana Legislature's decision to change the tax status of interstate motor carriers which changed certain carriers' liability for state taxes. The change, embodied in Public Law 66 (I.C. 6–1.1–8–2 through 6–1.1–8–35, hereinafter P.L. 66), was enacted in 1981 and became effective January 1, 1982. It is plaintiff's position that this change in the tax structure violates, *inter alia*, 49 U.S.C. § 11503(a); Article I, section 8, clause 3 of the United States Constitution; Article X, section 1 of the Constitution of the State of Indiana; Article VI, section 2 of the Constitution of the United States; and section 1 of the fourteenth amendment to the United States Constitution.

In order to fully understand plaintiff's arguments, some review of the change in the tax laws is necessary. Prior to enactment of P.L. 66, plaintiff's interstate motor carrier transportation property, which, so far as relevant includes its tractors and trailers, like most personal property in Indiana, was taxed pursuant to I.C. 6–1.1–3–1, *et seq.* Under the prior scheme of things, plaintiff's property, particularly its tractors and trailers, were taxed at rates which varied from one taxing unit to another. Since plaintiff operated in interstate commerce and was based in Washington Township, Allen County, plaintiff received the benefits of what is, apparently, a generally lower tax rate than the tax rate for the State of Indiana overall.

The enactment of P.L. 66, however, changed things, much to the dismay of present plaintiff. P.L. 66 imposes an *ad valorem* tax on the "indefinite—situs distributable property" (which includes trac-

tors and trailers) of each interstate motor carrier company operating in the State of Indiana. Under the new law, taxes on an interstate motor carrier company's indefinite—situs distributable property is assessed according to mileage and the tax rate imposed is based upon the average personal property rate for the entire State of Indiana. Simply put, the tax rate under P.L. 66 is determined by taking the total property tax for each individual taxing unit in Indiana during a given year and dividing that figure by the total net assessed valuation of property in Indiana for the preceding year's assessment.

Herein lies the difference which makes a difference as far as present plaintiff is concerned. Under the prior law, it was taxed in accordance with the rates assessed in Washington Township, Allen County. Now, plaintiff is taxed on a state-wide average. It is plaintiff's position that it has been discriminated against because it must pay a tax which is greater because of the fact that it operates in interstate commerce. This, of course, in plaintiff's view, violates the various state constitutional, federal constitutional, and federal statutory provisions enumerated before.

While arguably conceding that the taxing scheme violates some of the provisions of federal law, defendants allude to the fact that this court should abstain from deciding this issue because a parallel claim has been filed in a state court. Though plaintiff, and not defendants, has chosen to brief the issue, the court is of the view that the better approach is to defer further consideration pending the outcome of the state court determination.

The pending state court proceeding revolves around a decision of the Hendricks Circuit Court, State of Indiana, entered on April 20, 1983 in *Private Truck Council of America v. John Huie, et al.,* Cause No. CV 882–361. The final judgment, which found P.L. 66 to be in violation of both the federal constitution and the state constitution, is presently on appeal to the Indiana Supreme Court.

In the state court, the judge certified a class action wherein the plaintiffs were interstate motor carriers all of whom were based outside the State of Indiana. The defendants were the State Board of Tax Commissioners, the Department of State Revenue and individual members of the Board and Department. The complaint filed in the state court charged that P.L. 66 was violative of 49 U.S.C. § 11503(a), Article I, section 8, clause 3 of the Constitution of the United States, Article X, section 1 of the Constitution of the State of Indiana, and Amendment 14, section 1 of the Constitution of the United States. The court found that P.L. 66 was unconstitutional because it violated the Commerce Clause and further because it violated Article X of the Indiana Constitution.

Present plaintiff does not view the action in this court and the one in the Hendricks Circuit Court as being parallel proceedings. Many reasons are given for distinguishing the two cases, however, two are of primary importance. First, while many of the defendants are the same, and the goals in both proceedings are the same, the plaintiffs fall into two distinct categories. In the state court proceeding, the plaintiffs are comprised of interstate motor carriers based outside of the State of Indiana. Here, there is a singular plaintiff which operates an interstate motor carrier based entirely within the State of Indiana. Second, plaintiff asserts that while section 11503(a) was pled in the state court proceeding that court did not consider or rule upon the applicability of that statute and thus this court should address the applicability of section 11503(a).

As indicated, the state court decision declaring P.L. 66 unconstitutional is presently upon appeal to the Indiana Supreme Court. During the pendency of the state court proceedings, the plaintiffs in the state court action and present plaintiff have deposited the disputed taxes in an escrow account under the control of the Indiana Department of Revenue.

*Application of Law*

In discussing the doctrine of abstention, two basic and somewhat interrelated notions must be kept in mind. First, "federal courts are obligated to exercise the jurisdiction conferred upon them by Congress and the Constitution." *Bally Mfg. Corp. v. Casino Control Commission,* 534 F.Supp. 1213, 1215 (D.N.J.1982). "Thus, the exercise of jurisdiction is the rule; abstention is the 'extraordinary and narrow exception.'" *Id., quoting Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The second principle "is that of comity within the federal system, a principle that rests in an uneasy tension with the previous [one]." *Bally, supra,* at 1216.

"There are three general categories of abstention, as well as a fourth category that is closely related to abstention, but is not, properly speaking, a type of abstention." *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813, 815 (9th Cir.1982). As stated by the United States Supreme Court:

(a) Abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law ...". *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063 [3 L.Ed.2d 1165] (1959) ...

(b) Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar ...

(c) Finally, abstention is appropriate where absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings. [Citations omitted] ... State nuisance proceedings antecedent to a criminal prosecution ... or collections of state taxes ...

*Colorado River, supra,* 424 U.S. at 814–16, 96 S.Ct. at 1244–46. Respectively, these three types of abstention are commonly referred to as *Pullman* abstention, *Burford* abstention, and *Younger* abstention. The fourth category, the close relative of abstention, was referred to by the Supreme Court in *Colorado River* as the "wise judicial administration" exception to the exercise of jurisdiction. *Id.* at 817–18, 96 S.Ct. at 1246–47.

Applying the foregoing principles to the facts of the present case, the court is of the view that a stay of the federal proceedings is in order based upon the "wise judicial administration" exception to the exercise of jurisdiction. Prior to discussing that exception, however, a brief discussion of the applicability (or inapplicability) of the three traditional forms of abstention is appropriate.

■ It is not altogether clear that the facts underlying this case fit precisely within the parameters of any of the three forms of abstention referred to above. *Burford* abstention seems inapplicable since the purpose of *Burford* abstention is to avoid "federal intrusion into matters which are largely of local concern and which are within the special competence of local courts." *International Brotherhood of Electrical Workers Local 1245 v. Public Service Commission of Nevada,* 614 F.2d 206, 211 (9th Cir.1980). "Its application generally requires first, that the state has chosen to concentrate suits challenging the action of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy." *Knudsen Corp. v. Nevada State Dairy Commission,* 676 F.2d 374, 377 (9th Cir.1982). Thus, in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court "approved a district court's decision to dismiss a complaint involving the state's complex oil conservation scheme, because of the dangers of hindering the develop-

ment of coherent state policy and interfering with its comprehensive administrative scheme administered by a specialized tribunal." *Board of Education of Valley View v. Bosworth,* 713 F.2d 1316, 1320 (7th Cir. 1983). Here, unlike cases where *Burford* abstention may be warranted, the state has not concentrated challenges to the regulations in any particular or specialized court, and the federal issues involved can be separated from the state law questions which, moreover, are not complex and do not require an extensive background in local law.

■ Nor would it appear that *Younger* abstention is warranted given the facts of this case. "The principles of federalism espoused in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), have not been limited to federal court interference in state criminal proceedings but have been extended to some state civil actions." *Fair Assessment in Real Estate Ass'n. v. McNary,* 454 U.S. 100, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981). Civil actions which can be encompassed within the *Younger* abstention doctrine include suits which seek to enjoin the collection of state taxes because of the peculiarly local concern involved. *Id.* For the most part such suits in federal court are barred by the Tax Injunction Act, 28 U.S.C. § 1341, yet even if the Tax Injunction Act is inapplicable, "a federal court may nevertheless exercise its discretion to withhold equitable relief in reliance on the fundamental principle of comity between federal court and state government that is essential to 'our federalism' particularly in the area of state taxation." *Board of Education of Valley View, supra,* at 1320. This case, however, is somewhat different because under the relevant statute, 49 U.S.C. § 11503(a), Congress has explicitly granted the federal courts power to entertain suits such as this notwithstanding the provisions of the Anti-tax Injunction Act. That Congress has such power and that this court should not abstain merely because the state's taxing power is implicated in this suit cannot be disputed. As stated by one court in construing 49 U.S.C. § 11503(a):

The plenary power of Congress under the Commerce Clause is well established and needs little citation. This power encompasses the regulation of commerce itself as well as those activities affecting interstate commerce.... The power includes the power to control state taxation affecting interstate commerce.

*Arkansas-Best Freight System, Inc. v. Cochran,* 546 F.Supp. 904, 910 (M.D.Tenn. 1981). Thus it would appear that *Younger* abstention is inapplicable.

If any of the three traditional forms of abstention are appropriate in this case, it would have to be *Pullman* abstention. In *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held it proper to exercise equitable discretion to abstain when the resolution of a difficult threshold issue of state law could obviate the need to decide a constitutional question. In analyzing the factors to be considered, the Supreme Court has said:

> The paradigm of the "special circumstances" that make abstention appropriate is a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question ... Of course, the abstention doctrine contemplates that deference to state court adjudication only be made where the issue of state law is uncertain ... But when the state statute at issue is fairly susceptible to an interpretation which would render unnecessary or substantially modify the federal constitutional question, abstention may be required in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law and premature constitutional adjudication.

*Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 306, 99 S.Ct. 2301, 2313, 60 L.Ed.2d 895 (1979). "The assumption which justifies abstention is that a federal court's erroneous determination of a state law issue may result in premature unnecessary constitutional adjudication, and unwarranted interference with state progress and statutes." *Pue v. Sillas,* 632 F.2d 74, 79 (9th Cir.1980).

In the present matter there exists an ongoing state proceeding in which the state court has found P.L. 66 to be violative of both the United States Constitution and the Indiana Constitution. If upheld on appeal, as plaintiff concedes, the controversy in this court would be moot. In this respect it appears that abstention is warranted because the state court's conclusion could result in this court not having to reach the federal constitutional issue. Since the state trial court found P.L. 66 to be violative of Article X, section 1 of the Indiana Constitution, a provision which on its face does not mirror a federal constitutional provision such as the Equal Protection or Due Process clauses, this is not a case where the state constitutional provision merely supplements the federal constitution so as to make *Pullman* abstention unwarranted. *See Pue, supra,* at 79–81 and cases cited therein. The problem with respect to *Pullman* abstention in this case, however, arises because of the fact that while section 11503(a) was pleaded in the state court, it was not ruled upon by that court. Here, aside from the state and federal constitutional issues, this court could rule on the basis of the federal statutory issue presented thus obviating the need to address a federal constitutional issue. *See Turf Paradise, supra,* 670 F.2d at 819–20. Since the federal statutory issue remains, it is not altogether clear that *Pullman* abstention is warranted even given the existence of an unclear issue of state law.

Notwithstanding the fact that this court is unprepared to abstain on the basis of any of the three traditional forms of abstention, it should be noted that at least one court has done so in construing a very analogous statute. In *Missouri Pacific Railroad v. Tax Division,* 504 F.Supp. 907 (E.D.Ark.1980), a case involving the parallel statute for railroads, the court decided to abstain from deciding the merits of the litigation though it is unclear as to which of the three traditional forms of abstention

the court relied upon. Initially, the court spoke in terms of *Younger* abstention. Later, on a motion for reconsideration, the court spoke in terms of *Burford* or *Pullman* abstention. Regardless of the underlying reasons, however, the court's ultimate conclusion is clear:

> In conclusion, it is the finding of the court that the invocation of the abstention doctrine in the instant case is not an abdication of its duty and authority, but is rather an exercise of equitable discretion which is warranted by the extremely local nature of the issues at stake ... It appears that intervention in this case by the federal court in the Arkansas ad valorem property tax system will likely result in needless federal conflict with state policy, which the Supreme Court in *Burford* clearly sought to prevent. It is thus deemed that the best course is to defer to the state courts for the resolution of this matter of extremely local concern.

*Missouri Pacific, supra,* at 913; *contra, Atchison, Topeka & Santa Fe Railway v. State of Arizona,* 559 F.Supp. 1237 (D.Ariz.1983); *Atchison, Topeka & Santa Fe Railway v. Lennen,* 552 F.Supp. 1031 (D.Kans.1982). Given the foregoing passage and given the fact that the statute under consideration in *Missouri Pacific* and the statute involved in this case are highly analogous, there exists authority for the proposition that this court should abstain from adjudication of the present litigation upon one of the three traditional doctrines of abstention. Abstention may even be more warranted in this case than it was in *Missouri Pacific* because here there has already been a state court adjudication, albeit on appeal, which found Indiana's *ad valorem* invalid.

 Instead of relying solely upon the possibility that one of the three traditional forms of abstention might be appropriate in this case, this court is inclined to stay further consideration of this federal suit pending an outcome of the state court appeal based upon the "wise judicial administration of judicial resources" exception to

jurisdiction. *See Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). "Any decision of federal court deferral to a parallel state proceeding for reasons apart from the traditional categories of abstention must begin with *Colorado River Water Conservation District v. United States* ...". *Calvert Fire Ins. Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228, 1233 (7th Cir.1979) (footnote omitted).

In *Colorado River* the Supreme Court, while indicating that a federal court's deferral to a state court proceeding is more limited than in cases where a federal court defers to another federal court, did not articulate a different test to be applied. Instead, the Court referred to the traditional balancing test utilized to defer adjudication of parallel matters. In balancing the interests, the district court must consider both the obligation to exercise jurisdiction and various factors which counsel against the exercise of such jurisdiction. As stated by the United States Court of Appeals for the Seventh Circuit:

> In making this judgment, the district judge may take into account such factors as (1) the desire or ability of avoiding piecemeal litigation, (2) the order in which jurisdiction was obtained by the concurrent forums, (3) the inconvenience of the federal forum, and (4) the court first assuming jurisdiction over any property which may be involved in the suit.

*Calvert Fire, supra,* at 1234; *see also Voktas v. Central Soya Co., Inc.,* 689 F.2d 103 (7th Cir.1982). Because the test announced in *Colorado River* was open-ended in nature, the Seventh Circuit has also found that it is proper for the district court to take into account the vexatious nature of the federal suit. *Calvert Fire, supra,* at 1234.

"The district judge's exercise of discretion should be based on his weighing of a combination of factors ... [for] the above list is not exhaustive, and the district judge should consider any special factors counseling for or against the exercise of jurisdiction in the case before him." *Calvert Fire,*

**318**

*supra,* at 1234. Thus, "[t]he decision whether to dismiss [or stay] a federal action because of parallel state court litigation does not rest upon a mechanical checklist, but on a careful balance of the factors as they apply in a given case with the balance weighted in favor of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). "The weight to be given to any one factor may vary greatly from case to case depending upon the particular setting of the case." *Id.; see also Board of Education of Valley View, supra.*

At least two of the foregoing enumerated factors, in the court's view, have determinative force in the present case. First, the desirability of avoiding piecemeal litigation suggests that further action by this court would be improvident. Second, the order in which the concurrent jurisdiction has been obtained suggests that this court should stay further consideration of the present dispute. The other factors, while perhaps relevant, do not override this court's decision to stay further proceedings pending the outcome of the state court proceedings.

With respect to the avoidance of piecemeal litigation, this court is of the view that for it to act would unnecessarily encumber the present dispute. It is clear that a court in this state has already found P.L. 66 to be invalid based upon both state and federal grounds. True, present plaintiff is not a party to the pending suit in state court, but this alone is not decisive given the fact that it, as well as the state court plaintiffs, is opposed to P.L. 66 and further given the fact that the state statute under consideration has been found to be invalid. There does not appear to be any

dispute between the plaintiff in this action and those in the state court. Merely because the plaintiff in this forum is different than that in the state forum is not conclusive. *See Landis v. North American Co.,* 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). The rights aired in this court, albeit by a different plaintiff, are the same and the only distinction is that the state court did not reach the federal statutory provision embodied in section 11503(a). To presuppose that P.L. 66 violates section 11503(a) begs the question because this court, as well as the Hendricks Circuit Court, could rule on any of the numerous grounds advanced in present plaintiff's complaint.

Since the state court has already found the pertinent statute unconstitutional, it would appear that deference, pending the outcome of an appeal, to the state court would avoid the problem of piecemeal litigation. True, the Indiana Supreme Court could very well reverse the lower state court and in that respect plaintiff's claim under 11503(a) may be hindered due to the passage of time. It is imperative to note, however, that during the pendency of the state litigation and the litigation in this court, the amount assessed for taxes under P.L. 66 has been placed in escrow.[1] Thus, while there may be a delay respecting a decision on section 11503(a) (should one be needed) the harm, if any, is considerably lessened by the fact that the tax monies have been placed in an interest bearing escrow account. Moreover, should this court address section 11503(a) at this juncture and rule favorably to plaintiff, there is the possibility or probability that the state would appeal this court's decision on that issue resulting in further delay.[2] Rather

---

**1.** At the hearing on the motion for summary judgment, the state conceded that it would continue to escrow NAVL's monies:

THE COURT: ... If the Indiana Supreme Court reversed the Hendrix County Court those taxes would become due and, of course, this case would still be pending. The escrow account with respect to North American, would the State treat the escrow as still in effect as far as this pending litigation is con-

cerned if you [the state] were to prevail in the Indiana Supreme Court?

MR. LARUE [Deputy Attorney General]: If this case continued and the Supreme Court case terminated we could continue to escrow North American's funds separately.

(Excerpt from December 15, 1983 hearing).

**2.** Because of the strong possibility that the state would appeal an adverse ruling by this court, plaintiff would probably not benefit with re-

than address the implications of section 11503(a) in this suit, it appears that this court should defer to the Indiana Supreme Court to resolve the controversy presently before it. Further, there is no indication from any of the pleadings on record in this court that the issue under section 11503(a) will not be resolved at some juncture by a court in this state.

Also worthy of consideration is the fact that jurisdiction over the present legal issues was first obtained in the state court. Certainly, "priorities should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Community Hospital, supra,* 103 S.Ct. at 940. In the present case, much progress has already been made in the state court. The Hendricks Circuit Court has already found P.L. 66 to be unconstitutional. And though present plaintiff is not a party to the state court proceeding, it is clear, as plaintiff concedes, that the trial court ruling favors present plaintiff as much as it does the state court plaintiff. Given the advanced stage of the state court litigation, further consideration of the parallel litigation in this court seems premature.

After careful balance of all the factors in this case, it is the considered judgment of this court that it should not exercise jurisdiction over this matter at this juncture. Accordingly, the litigation in this court will be stayed subject to resolution of the parallel claims in the state court. *See Evans Transportation Co. v. Scullin Steel Co.,* 693 F.2d 715, 717–18 (7th Cir.1982) (holding that when a federal court declines to exercise jurisdiction because of the pendency of parallel state proceedings, it should stay rather than dismiss the case).

### Conclusion

On the basis of the foregoing, this action is STAYED pending resolution of *Private Truck Council of America, Inc., et al. v. Huie, et al.,* which is currently before the Indiana Supreme Court under Cause No.

spect to the taxes which are due and owing for

1083 S 351. After that court has had an opportunity to pass upon the legality of P.L. 66, this court, should it become necessary, will rule upon plaintiff's motion for summary judgment.

Having made the foregoing findings and order, the court would further state that plaintiff's position is well reasoned and well briefed, and it is obvious to the court that it is a close question. Therefore, pursuant to 28 U.S.C. § 1292(b), this court states that it is of the opinion that the foregoing order staying the present matter involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. *See Hewitt, et al. v. Joyce Beverages,* 721 F.2d 625 (7th Cir.1983).